ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



RECEIVED
MAY 18 2022
PRO SE OFFICE

Pusha Probil

*(Write the full name of each plaintiff who is filing this
complaint. If the names of all the plaintiffs cannot fit in
the space above, please write "see attached" in the space
and attach an additional page with the full list of names.)*

-against-

Pay Cargo LLC
Eduardo del Riego
Xander Law Group, P.A.

*(Write the full name of each defendant who is being sued.
If the names of all the defendants cannot fit in the space
above, please write "see attached" in the space and attach
an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. CV 22-2907

*(to be filled in by the Clerk's Office)*

Jury Trial:     ☑ Yes    ☐ No

*(check one)*

GONZALEZ, J.

CHO, M.J.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name — *Pasha Probiv*

Street Address — *1216 Broad way, 2nd Floor*

City and County — *New York, NY 10001*

State and Zip Code

Telephone Number — *203-903-2748*

E-mail Address — *pasha.probiv@gmail.com*

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name — *Pay Cargo LLC*

Job or Title
(if known)

Street Address — *201 Alhambra Cir Suite 711*

City and County

State and Zip Code

Telephone Number — *Coral Gables, FL 33134*

E-mail Address
(if known)

Defendant No. 2

Name — *Eduardo del Riego*

Job or Title
(if known) — *CEO and President*
*Pay Cargo LLC*

Street Address — *201 Alhambra Cir Suite 711*

City and County — *Coral Gables, FL 33134*

State and Zip Code

Telephone Number

E-mail Address

(if known)

Defendant No. 3

Name                        Xander Law Group

Job or Title

(if known)

Street Address City         1 NE 2nd Ave #200

and County State

and Zip Code                Miami, FL 33132

Telephone Number

E-mail Address

(if known)

Defendant No. 4

Name                        Jason Weber

Job or Title                Principal

(if known)

Street Address City         1 NE 2nd Ave #200

and County State            Miami, FL 33132

and Zip Code

Telephone Number

E-mail Address

(if known)

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

3

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

RICO

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* Vasha Prabiv , is a citizen of the State of *(name)* New York .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* Eduardo dd Riesa is a citizen of the State of *(name)* Florida . *Or* is a citizen of *(foreign nation)* _____.

4

Case 1:22-cv-02907-HG-JRC    Document 1    Filed 05/18/22    Page 5 of 40 PageID #: 5

b.   If the defendant is a corporation

The defendant, *(name)* _Paycaryo LLC_, is incorporated under
the laws of the State of *(name)* _Florida_, and has its
principal place of business in the State of *(name)*
_____. *Or* is incorporated under the laws of *(foreign
nation)* _____, and has its principal place of business
in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page
providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or
the amount at stake—is more than $75,000, not counting interest and costs of court,
because *(explain)*:

_Business damage accounts to_
_$5,000,000 +_

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as
possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State
how each defendant was involved and what each defendant did that caused the plaintiff harm or
violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more
than one claim is asserted, number each claim and write a short and plain statement of each claim in a
separate paragraph. Attach additional pages if needed.

_____

**IV.    Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_____

_____

_____

_____

_____

**V.    Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.    For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____, 20___.

Signature of Plaintiff          _____

Printed Name of Plaintiff       _____

## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

——————————————

PASHA PROBIV

Plaintiffs,

-against-

PAYCARGO LLC,
EDUARDO DEL RIEGO,
XANDER LAW GROUP, P.A.,
and JASON WEBER

Defendants.

———————————————————

Complaint for a Civil Case

Case No: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Pasha Probiv, appearing pro se, respectfully alleges as follows:

1. Plaintiff Pasha Probiv, a citizen of New York, is pro se and sui juris who owns and operates a technology consulting company and a cyber-security company in New York, NY.

2. Defendant PayCargo LLC ("PayCargo") is a Foreign Delaware limited liability company authorized to transact business within the State of Florida and with its principal place of business in Coral Gables, Florida. PayCargo LLC is a company that provides electronic payment system for the global shipping industry.

3. Defendant Eduardo del Riego ("EDR") is sui juris and a resident of the State of Florida and is also the CEO and President of PayCargo LLC.

4. Defendant Xander Law Group, P.A. ("XLG") is a Florida corporation operating as a law firm with its principal place of business in Miami-Dade County, Florida.

5. Defendant Jason Weber is sui juris and a resident of the State of Florida.

6. Defendant Jason Weber is an attorney that owns and operates XLG and was at all material times the Chief Legal Officer of PayCargo.

7. Jason Weber reported and continues to report directly to PayCargo's CEO Eduardo del Riego.

8. Defendants PayCargo, Eduardo del Riego, XLG and Jason Weber are collectively referred to as "Defendants" hereunder.

9. At all times material to this Complaint, the individual officers, directors, executives, managers, supervisors, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, executives, managers, supervisors, employees and/or agents of Defendant, PayCargo.

10. Jurisdiction of the subject matter of this action is established in this Court under Title 28 of the United States Code, Section 1332 (diversity) and the amount in controversy exceeds the jurisdictional requisite.

11. This is the proper venue for this action in that unlawful acts alleged herein caused a significant amount of harm was committed upon Plaintiff and Plaintiff's business in this Court's jurisdiction.

## **FACTUAL BACKGROUND**

12. Plaintiff started serving as a technology consultant for Defendant PayCargo in July 2017 and the parties signed a Consulting Agreement which is attached hereto as Exhibit A.   Plaintiff also employed other people to work for it, as contractors of Wale Up LLC, under the Consulting Agreement it had with PayCargo.

13. Thereafter, Plaintiff accepted a position with PayCargo as Chief Technology Officer.

14. On or about August 15, 2018, Plaintiff resigned as Chief Technology Officer from PayCargo to pursue other business opportunities with his own business.

15. This complaint is brought to this court due to extortion and the illegal efforts of PayCargo, EDR, XLG and Jason Weber to prevent Plaintiff from pursuing business opportunities with CargoSprint LLC a leading competitor of PayCargo by threats and intimidation.

16. On July 2nd, 2020, **22 months** after Plaintiff's resignation from PayCargo, PayCargo and XLG threatened Plaintiff and his wife, Lauri Galbreath, with the prosecution of an action for breaches of contract, trade secret misappropriation and conversion, defalcations and other misfeasance.

17. XLG and Jason Weber on behalf of PayCargo and at the direction of PayCargo's CEO Eduardo del Riego delivered via private investigator to the home of Plaintiff and his wife, Lauri Galbreath, located in the State of Connecticut a sham lawsuit draft (Exhibit B) which XLG threatened to file if (according to the demand letter accompanying the delivered lawsuit Exhibit C) Plaintiff traveled to Mexico to meet with Joshua Wolf or continued contacting Joshua Wolf, CEO of CargoSprint LLC.

18. The draft federal lawsuit delivered to the home of Plaintiff had no merit and was filed solely for improper purposes, including (a) preventing Plaintiff from enjoying a working relationship with CargoSprint LLC and thereafter (b) attempting to stipulate a settlement in which Plaintiff in order to get the case dismissed would have to falsely testify against itself and PayCargo's main competitor, CargoSprint LLC.

19. The draft lawsuit, *inter alia*, contained the following misrepresentations that were made for the sole purpose of extorting Plaintiff from meeting with and/or working with CargoSprint LLC:

    a. False accusation that Plaintiff misappropriated PayCargo's trade secrets.

    b. False accusation that Plaintiff's wife Lauri Galbreath directed Plaintiff to store PayCargo's trade secrets on its personal computer.

    c. False accusation that Plaintiff's wife conspired with Plaintiff on misappropriating PayCargo's trade secrets.

    c. False accusation that Plaintiff used its personal computer to store PayCargo's trade secrets.

    d. False accusation that Plaintiff refused to render access to PayCargo's system upon its resignation from PayCargo.

    e. False statement that Plaintiff was terminated by PayCargo's CEO on August 15th, 2018.

20. The false accusations were delivered to Plaintiff and his wife in a draft complaint without any supporting evidence. There were no valid legal claims against Plaintiff and his wife.

There was absolutely no evidence or probable cause for Plaintiff's alleged misappropriation of Trade Secrets.

21. Defendant PayCargo filed a federal lawsuit in the Southern District of Florida (PayCargo vs. Galbreath 1:20-cv-22885-KMW) ("Malicious Action") against Plaintiff shortly after extortion paperwork was served on Plaintiff. The filed complaint didn't mention the name of Plaintiff's wife or company and didn't include them as defendants, contrary to what was presented in the draft complaint.

22. On around Feb, 4, 2021, Defendant Jason Weber, under direction of Defendant Eduardo del Riego, contacted Plaintiff in an attempt to settle the Malicious Action by offering Plaintiff to sign a false statement, that included a false testimony against Plaintiff and CargoSprint LLC.

23. Jason Weber threatened to join Plaintiff's company as a Defendant in the Malicious Action, forcing Plaintiff to acquire legal counsel if Plaintiff weren't going to provide the sought statement. Plaintiff had to incur tens of thousands of dollars in legal fees after refusing to provide the false sworn statement.

24. Upon filing a 2nd amended complaint and its motion to dismiss for its Malicious Action (PayCargo vs. Galbreath 1:20-cv-22885-KMW D.E. 111, D.E. 164), Defendant PayCargo made another false accusation toward the Plaintiff:

  a. False accusation that Plaintiff embedded a special code upon its departure from PayCargo in PayCargo's system to spy on PayCargo's customers.

25. There was no mistaking the magnitude of the threats lodged against Plaintiff by PayCargo, Eduardo del Riego, XLG and Jason Weber. There were never any valid legal claims aigainst Plaintiff and his wife, Lauri Galbreath.

26. As was stated to Pasha Probiv, in the demand letter delivered to him, if he personally met with representatives of CargoSprint LLC to pursue business opportunities with CargoSprint LLC (which Plaintiff was legally entitled to do) then PayCargo with the help of XLG, attorney Jason Weber would file a sham lawsuit in federal court against Plaintiff and his wife to destroy their personal and professional reputations.

27. As a direct and proximate result of PayCargo, Eduardo del Riego, XLG and Jason Weber illegal and extortionate demands, Plaintiff had a sham lawsuit filed against him for meeting with CargoSprint and its representatives, Plaintiff also incurred tens of thousands of dollars in legal fees and he suffered extreme emotional and physical distress under the repeated threat that PayCargo, Eduardo del Riego, XLG and Jason Weber to ruin him.

28. No suit was ever filed against Plaintiff's wife and the federal lawsuit filed by PayCargo and XLG never mentioned her name (PayCargo vs. Galbreath 1:20-cv-22885-KMW D.E. 1).

29. The Malicious Action against Plaintiff, its later joined company, Wale Up LLC and later joined 3-rd party CargoSprint, LLC was dismissed without prejudice by Defendant PayCargo in November 2021 for lack of evidence against any of the parties.

30. Defendant Jason Weber made a public statement regarding the lawsuit in a 3-rd party publication upon its dismissal.

## FIRST CAUSE OF ACTION – FEDERAL RICO

31. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

I.

32. PayCargo LLC, Eduardo del Riego, XLG and Jason Weber were all part of an enterprise consisting of a union or group of individuals with a common purpose that are associated in fact.

33. The enterprise has as its purpose extortion, the relationship of the parties consists of informal and formal agreements and understandings to cause harm, threaten, embarrass and defame through unsophisticated, brutal and unlawful means, with longevity - a scheme that commenced in 2018 more fully described above.

34. XLG and Jason Weber on behalf of PayCargo and at the direction of PayCargo's CEO Eduardo del Riego delivered via private investigator to the home of Plaintiff and his wife, Lauri Galbreath, located in the state of Connecticut a sham lawsuit which XLG threatened to file if (according to the demand letter accompanying the delivered lawsuit) Plaintiff traveled to Mexico to meet with Joshua Wolf, CEO of CargoSprint LLC or continued contacting him.

35. The members of the enterprise PayCargo, Eduardo del Riego, XLG, Jason Weber all shared a common hostility toward Plaintiff and CargoSprint LLC and to further pursue their extortionate scheme they threatened and then did file a sham lawsuit in federal court against Plaintiff and falsely threatened its wife, Lauri Galbreath with a sham lawsuit to destroy their personal and professional reputations if Plaintiff met with CargoSprint LLC and its representatives.

## SECOND CAUSE OF ACTION – DECEPTIVE ACTS AND PRACTICES IN BUSINESS

36. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

37. PayCargo, Eduardo del Riego, XLG and Jason Weber's publication of defamatory falsehoods about Plaintiff and their extortion of Plaintiff and its wife constitute deceptive acts and practices in the conduct of business, trade or commerce.

38. Defendants' actions violate General Business Law § 349(a) and are deceitful.

39. Defendants' willful methods, acts, or practices were consumer-oriented and misleading. Defendants' conduct involved an extensive extortion scheme involving the dissemination of information to the public. Defendants' actions have the potential and did affect consumers at large.

40. Plaintiff suffered injury and loss as a result of acts or practices that violate General Business Law § 349.

41. Plaintiff brings this action against Defendants pursuant to General Business Law §349(a) to recover to actual damages, plus attorney's fees and court costs, in the sum of $5,000,000.00 or such other amount as is determined by the Jury. In addition to damages, attorney's fees and costs, Plaintiff seek a declaratory judgment that Defendants' acts and practices violate §349(a) and an injunction to prevent from violating the Act in the future.


**THIRD CAUSE OF ACTION –
TORTIOUS INTERFERENCE**

42. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

43. At the time Defendants extorted Plaintiff, Plaintiff had a legal right to meet with CargoSprint LLC for future business when the Defendants interfered in this relationship with

threats and sham lawsuits. Plaintiff had a reasonable expectation of earning substantial income from these business relationships.

44. Defendants knew about Plaintiff's interest in working with CargoSprint LLC and intentionally and tortuously interfered with the relationship without just cause.

45. Defendants intentionally interfered with Plaintiffs business rights and business expectancies by, *inter alia*, devising, aiding, abetting and actively participating in the scheme to extort Plaintiff and to injure it and its business and reputation.

46. Defendants intentionally interfered with Plaintiffs business rights and expectancies by, *inter alia*, intimidating CargoSprint LLC's officers with extensive litigation as a result of a business relationship with the Plaintiff.

47. Defendants' improper methods, actions and practices were, *inter alia*, defamatory, unethical, oppressive, over-reaching, fraudulent, hostile, sharp, and criminal.  In all, Defendants' interference was completely unjustified.

48. As a direct result of Defendants' tortious interference with Plaintiff's contracts and business expectancies, Plaintiff suffered damage and incurred loss, including, without limitation, injury to its business, loss of clients, damage to its reputation, prestige and standing, attorney's fees, court costs, and other damages in the sum of $5,000,000.00 or such other amount as is determined by the Jury.

## FOURTH CAUSE OF ACTION –
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

50. Defendants' conduct, detailed above, was intentional, reckless, concerted, criminal and deliberately violative of applicable Rules of Professional Conduct. They engaged in a series acts that, taken together, constitute extreme and outrageous behavior. They purposefully initiated a campaign to interfere with Plaintiffs' business relations and to extort a thing of value from Plaintiff, by, *inter alia,* maliciously threatening to defame it and its wife with scandalous accusations of criminal conduct, destroy its business, and harm PayCargo's competitor CargoSprint LLC in the process. In spite of their knowledge that Plaintiff had engaged in no wrongdoing of any kind, Defendants proceeded with their extortionate plan to stop Plaintiff from working with CargoSprint LLC. Defendants' conduct was flagrant and heartless.

51. Defendant's actions offend against generally accepted standards of decency and morality and are atrocious and utterly intolerable. They are attorneys, professionals and multinational corporations. They knew that their illegal actions would cause severe emotional distress.

52. Their outrageous conduct caused Plaintiff to suffer severe emotional distress, extreme fear and panic.

53. Defendants' misconduct constitutes intentional infliction of emotional distress.

54. As a direct result of Defendant's outrageous misconduct, Plaintiff suffered damage and incurred loss, including, without limitation, pain and suffering, physical injury, severe emotional trauma, insult, embarrassment, humiliation, public ridicule, anguish, stress and

anxiety, injury to reputation, special damages, attorney's fees, costs and out-of-pocket expenses in the sum of $5,000,000.00 or such greater amount as is determined by the Jury.

## FIFTH CAUSE OF ACTION – INJURIOUS FALSEHOOD

55. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

56. Defendants have made false statements about Plaintiff's conduct to maliciously harm Plaintiff's reputation and its economic advantage.

57. Defendants knew that the false statements they were making would negatively affect Plaintiff's economic advantage, business relationships, reputation and revenue of businesses associated with the Defendant.

58. Defendants knowingly and willfully caused injury to Plaintiff by making such statements.

## SIXTH CAUSE OF ACTION – PRIMA FACIE TORT

59. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

60. In their attempts to extort Plaintiff, Defendants intentionally inflicted harm on Plaintiff without excuse or justification. Their statements and actions were motivated by disinterested malevolence, malice and the desire to extort a settlement from Plaintiff without litigation.

61. As a direct result of Defendants' actions, Plaintiff suffered special damages and incurred loss, including, without limitation, injury to his business and property, loss of clients, damage to his reputation, prestige and standing, attorney's fees, court costs, and other damages in the sum of $5,000,000.00 or such other amount as is determined by the Jury.

## SEVENTH CAUSE OF ACTION –
## VIOLATION OF JUDICIARY LAW § 487

62. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

63. In the draft complaint, Defendants manufactured and repeated multiple patently false statements as a part of a scheme to extort a settlement from the Plaintiff.

64. Defendants are guilty of deceit or collusion with the intent to deceive the Federal Court for the Southern District of Florida. Defendants' deceit and collusion was both directed at the Court and it occurred during the course of a judicial proceeding.

65. Defendants' misrepresentations, deceit, and collusion constitutes misconduct under New York Judiciary Law § 487.

66. As a direct and proximate result of Defendants' misconduct, Plaintiff suffered substantial injury and loss of property, including the payment of attorneys' fees and costs, pain and suffering, physical injury, severe emotional trauma, insult, embarrassment, humiliation, public ridicule, anguish, stress and anxiety, injury to reputation, special damages, costs and out-of-pocket expenses in an amount to be determined by the Jury.

67. In accordance with New York Judiciary Law § 487, Plaintiff seeks treble damages to punish Defendants and to deter them from betraying their special obligation to protect the integrity of the Court and foster their truth-seeking function. Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of Defendants, and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery. Plaintiff reserves the right to amend this Complaint upon discovery of additional instances of the Defendants' defamation and wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff Pasha Probiv respectfully requests the Court to enter Judgment against PayCargo LLC, Eduardo del Riego, Xander Law Group. P.A. and Jason Weber jointly and severally, as follows:

A. Compensatory damages in the amount of $5,000,000.00;

B. Threefold damages in the sum of $15,000,000.00;

C. Punitive damages in the amount of $5,000,000.00 as a result of the Defendants' specific intent to harm Plaintiff and the actual harm inflicted on Plaintiff;

D. Prejudgment interest on the principal sum awarded to Plaintiff by the Jury; to the date of Judgment at the maximum rate allowed by law;

E. Post-judgment interest at the maximum rate allowed by New York law;

F. Costs and such other relief as is just and proper.

Dated:   May 18, 2022

Pasha Probiv (*pro se*)
1216 Broadway, 2nd Fl
New York, NY 10001
Phone: (203) 903-2748
Email: pasha.probiv@gmail.com

**EXHIBIT A: CONSULTING AGREEMENT**

CONSULTING AGREEMENT

AGREEMENT made as of the July 17, by and between BANYARCH LLC, a Delaware limited liability company (the "Company"), with an address at 21__ N Salzedo St., Suite 200, Coral Gables, Florida 33134 and Wise Fab, LLC, with an address at 21__ Pine St., #705, New York, NY _0002 (the "Provider").

WITNESSETH:

WHEREAS, the Provider has certain expertise and experience in the field of software development and programming, which expertise and experience are desired by the Company; and

WHEREAS, the Company intends to engage the Provider to provide consulting services to the Company and any affiliates designated by the Company (the "Company Parties") pursuant to the terms of this Consulting Agreement; and

WHEREAS, the Provider desires to provide such services to the Company Parties pursuant to this Consulting Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements of the parties contained herein, the sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

Term and Termination.

(a)   Term.   The Company hereby engages the Provider, and the Provider hereby accepts engagement by the Company, upon the terms and conditions hereinafter set forth for the period commencing on the date hereof and continuing for a period of one month from the date hereof (the "Initial Term").

(b)   Termination.   Either party may end the relationship and terminate this Agreement for any reason or no reason, upon 15 days' written notice to the other.

2.      Services.   During the term of this Agreement, the Provider shall render such services to the Company Parties, at such reasonable times and for a reasonable duration as from time to time shall be requested by Juan Dneppa, Thomas Vieweg and Eduardo Del Rieg. Such services shall be with respect to research, analysis and planning of the Company's technology in respect to business objectives as may be communicated between the Company Parties and the Provider. The Provider agrees to undertake on the Company's behalf only those assignments made by the Company Parties and not to intentionally take any actions during the term of this Agreement that would be harmful to the business and operations of the Company.

3.    Compensation.

(a)  Base Compensation.  As consideration for the services rendered by Provider pursuant to the terms of this Agreement, the Company hereby agrees to pay the Provider $5,000. For the first month. If Company desires to continue engaging Provider after first month, it will be subject to a separate agreement.

(b)  Provider shall not incur any expenses on the Company's behalf or in furtherance of providing the services discussed hereunder unless such expenses have been previously approved in writing (including by return email communication) by the Company. Following such approval, Provider may incur the expense and invoice the Company for such expenses, and invoices for fees (and expenses) shall be paid by the Company within 15 days after receiving an invoice from the Provider therefore.

*(c)  Notwithstanding any termination of this Agreement, the Provider shall be entitled to receive from the Company any approved and actually incurred unpaid fees and reimbursed expenses which fees and expenses shall continue to be payable subject to the terms hereof in connection with services performed through the effective date of such termination.*

4.    Disclaimer of Responsibility for Acts of the Company.  The obligations of the Provider described in this Agreement consist solely of the performance of consulting services, furnishing of information and advice to the Company.  In no event shall the Provider be required by this Agreement to act as the agent of the Company or others or to represent or make decisions for the Company.  All final decisions with respect to acts of the Company or its affiliates, whether or not made pursuant to or in reliance on information or advice furnished by the Provider hereunder, shall be those of the Company or such affiliates, and the Provider shall under no circumstances be liable for any expense incurred or loss suffered by the Company as a consequence of such decisions.

5.    Non-Competition; Confidentiality; Non-Solicitation and Intellectual Property.

a.  Non-competition.  During the Term and until the 18-month anniversary of the date of termination of this Agreement, the Provider shall not engage in or become associated with any Competitive Activity.  For purposes of this Section 6(a), a "Competitive Activity" shall mean any  involvement in any business engaged in transactions related to cargo shipment. The Provider shall be considered to have become "associated with a Competitive Activity" if one of Provider's officers or contractors becomes involved as an owner, employee, officer, director, independent contractor, agent, partner, advisor, or in any other capacity calling for the rendition of the Provider's personal services, with any individual, partnership, corporation or other organization that is engaged in a Competitive Activity and his involvement relates to a significant extent to the Competitive Activity of such entity.  If, at any time, the provisions of this Section 6(a) shall

-2-

be determined to be invalid or unenforceable, by reason of being vague or unreasonable as to area, duration or scope of activity, this Section 6(a) shall be construed divisible and shall become and be immediately amended to only such area, duration and scope of activity as shall be determined to be reasonable and enforceable by the court or other body having jurisdiction over the matter; and the Provider agrees that this Section 6(a) as so amended shall be valid and binding as though any invalid or unenforceable provision had not been included herein.

b. **Non-Solicitation.** The Company covenants and agrees that during the period of its engagement with the Waterlip, LLC (the "Consulting Period") and for a period of 18 months thereafter, regardless of the reason for the termination of the Consulting Period, Company shall not, without the prior written consent of The Waterlip LLC, either directly or indirectly, whether for Company's own benefit or the benefit of others:

(i) solicit, offer employment to, employ or take any other action intended, or that a reasonable person acting in like circumstances would expect, to have the effect of causing any officer or employee of, or a consultant to the Waterlip LLC, who was such an officer or employee or consultant at the time of the termination of the Consulting Period ... terminate his or her employment or consulting engagement with the Waterlip LLC and/or accept employment or become affiliated with, or provide services for compensation for any capacity whatsoever to, any other entity or person; or

(ii) provide any information, advice or recommendation with respect to any such officer or employee or consultant to any person or entity that is intended, or that a reasonable person acting in like circumstances would expect, to have the effect of causing any officer or employee of, or consultant to the Waterlip LLC who was such an officer or employee or consultant at the time of the Waterlip LLC's termination of employment, to terminate his or her employment or consulting engagement with the Waterlip LLC and/or accept employment or become affiliated with, or provide services for compensation in any capacity whatsoever to, any other person or entity.

c. **Confidentiality, Non-Solicitation and Intellectual Property.** The Company and Provider each acknowledge that Provider will have access to and be involved in dealing with the Company's confidential information, employees and intellectual property. Therefore, as a condition of Provider's acceptance of this Agreement and the terms of this Letter Agreement, concurrently with the execution of this Agreement, Provider will enter into the Company's standard Confidentiality, Non-Solicitation and Intellectual Property Agreement.

d. **Survival and Other Matters.** The provisions of Section 6(a), 6(b) and 6(c) shall survive the termination of this Agreement. This provision shall not be construed to limit the survival of any other provisions which also survive the termination of this Agreement by the express or implied terms of such provisions. The Provider acknowledges that he has been engaged for his unique services and that the breach of any provision in Sections 6(a), 6(b) and 6(c) would cause grave and irreparable injury to the Company that would not be compensable in

-24-

money damages and, therefore, in addition to the Company's other express and implied remedies, the Company shall be entitled to injunctive and other equitable relief to prevent any actual, intended or likely business that may result from said breach. However, nothing in this Section shall limit any other right or remedy to which the Company may be entitled. The existence of any claim or cause of action which the Provider may have against the Company shall not constitute a defense or a reason to invalidate any of the provisions of this Section 6.

6.    Entire Agreement; Amendment; Waiver.  This Agreement contains the entire understanding of the parties as to the subject matter hereof and fully supersedes all prior agreements and understandings between the parties as to such subject matter.  This Agreement may not be amended, supplemented, cancelled or discharged, except by a written instrument executed by the party as to whom enforcement is sought.  No failure to exercise, and no delay in exercising, any right, power or privilege hereunder shall operate as a waiver thereof.  No waiver of any breach of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of this Agreement.

7.    Severability.  The parties acknowledge that the terms of this Agreement are fair and reasonable at the date signed by them.  However, in light of the possibility of a change of conditions or differing interpretations by a court of what is fair and reasonable, the parties stipulate as follows: if any one or more of the terms, provisions, covenants or restrictions of this Agreement shall be determined by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.  Further, if any one or more of the terms, provisions, covenants and restrictions contained in this Agreement shall for any reason be determined by a court of competent jurisdiction to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed, by limiting or reducing it, so as to be enforceable to the maximum extent compatible with then applicable law.



8.    Notices. All notices, requests, demands and other communications provided for by this Agreement, shall be in writing and mailed in the United States enclosed in a registered or certified post-paid envelope, return receipt requested, or transmitted by facsimile, or delivered by same-day or overnight courier services, and addressed to the addresses of the respective parties stated below or to such changed addresses as such parties may fix by notice:

To the Company:

PayCargo, LLC
2100 Salzedo Street
Suite 200
Coral Gables, FL
33134

To the Provider:

Walz Up LLC
20 Pine Street, #16
New York, New York, 10005
Attention: Pasha Galbreath

*provided, however,* that any notice of change of address shall be effective only upon receipt. Any such notice shall be deemed to have been received on the date delivered or received at the premises as evidenced by the date noted on the return receipt, facsimile transmission receipt or courier receipt.

9.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

10.    Headings. The headings in this Agreement are for convenience of reference only and shall not control or affect the meaning or construction of this Agreement.

11.    Further Assurances. Each party agrees at any time, and from time to time, to execute, acknowledge, deliver and perform, and or cause to be executed, acknowledged, delivered and performed, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and or assurances as may be necessary, and or proper to carry out the provisions and or intent of this Agreement.

- 5 -

17.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunder set their hands and seals the day and year first above written.

COMPANY:

By:

PROVIDER:
Ward 1911 LLC

By:
Name: Peter Calhoun

## EXHIBIT B: MALICIOUS ACTION DRAFT

I.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PAYCARGO, LLC,

    Plaintiff,                                           CASE NO.

v.                                                    JURY TRIAL DEMANDED

PAVEL GALBREATH a/k/a PASHA
GALBREATH a/k/a PASHA PROBIV;
LAURI GALBREATH, and
WHITEHACK, LLC,

    Defendants.

_____/

## COMPLAINT

Plaintiff PAYCARGO, LLC ("Plaintiff" or "PayCargo") hereby sues Defendants, PAVEL

GALBREATH a/k/a PASHA GALBREATH a/k/a PASHA PROBIV, LAURI GALBREATH, and

WHITEHACK, LLC, and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff PayCargo is a Delaware limited liability company authorized to transact

business within the State of Florida and with its principal place of business in Miami-Dade County,

Florida.

2.    Defendant Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv ("Pasha") is

an individual who is at least 18 years of age, who resides in New York and is otherwise *sui juris*.

3.    Defendant Lauri Galbreath ("Lauri") is an individual who is at least 18 years of

age, who resides in New York and is otherwise *sui juris*.

4.    Pasha and Lauri are married.

1

5.   Defendant WhiteHack, LLC ("WhiteHack") is a Delaware limited liability corporation with its principle place of business in Delaware.

6.   This Court has subject matter jurisdiction under the Court's federal question jurisdiction based on allegations that Defendants misappropriated trade secrets and violated the Lanham Act. This Court has supplemental jurisdiction over the state law claims alleged herein.

7.   Venue is proper in Miami-Dade County, Florida because this cause of action arose in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

8.   PayCargo provides an electronic payment platform designed to process payments in the freight and logistics industry. This system allows for payers to make payments for cargo shipments to a network of vendors and facilitates the prompt release of said cargo by the vendors.

9.   Pasha worked for PayCargo from in or about July, 2017 until on or about August 15, 2018. Pasha was employed as PayCargo's Chief Technology Officer ("CTO"), during which time Pasha enjoyed unlimited access to PayCargo confidential and propriety systems and technologies. Pasha directed the PayCargo technology team as well as architected a major redesign of the PayCargo platform.

10.   In connection with his employment, Pasha signed the Employment Agreement attached as **Exhibit A**.

11.   This Employment Agreement prohibits the disclosure of any of PayCargo's "Trade Secrets and Confidential Information." This includes, *inter alia*, the identity of any customers of PayCargo as well as technical information regarding the PayCargo platform.

12.   In connection with Pasha's role as PayCargo's CTO, he was involved in the following aspects of PayCargo's most sensitive information and had full access to, among other

2

things: customer lists, customer bank account information, customer transaction histories, system architecture, hosting accounts and configuration of same, money flow processes, the NACHA process (money movement instructions), the source code, code management tools, development management tools, internal communications tools, customer service management tools, customer facing website security programs, and the system's production servers (the "Trade Secrets").

13.    At the direction of his wife, Lauri, Pasha maintained copies of certain of the Trade Secrets on his personal computer, in addition to his authorized PayCargo laptop.

14.    To ensure that all components of the PayCargo platform could be replicated, Pasha sought the advice of his wife, Lauri, who is a computer programmer under the employ of Morgan Stanley. Lauri was exposed to the Trade Secrets and contributed to the replication of the PayCargo platform.

15.    In an effort to negotiate a salary increase, on or about July 23, 2018, Pasha tendered his resignation to purportedly "start [his] Cyber Security practice by Sept 1st, 2018." Instead of offering a salary increase, PayCargo accepted Pasha's resignation.

16.    On August 12, 2018, after Pasha unilaterally removed an authorized individual's access to the PayCargo system, Pasha was instructed to transfer, among other things, his system access and credentials to the individual authorized by PayCargo in anticipation of Pasha's impending departure from PayCargo.

17.    Pasha refused to transfer his access credentials to the authorized individual.

18.    Pasha's refusal led to the immediate termination of his employment on or about August 15, 2018.

3

19.     The following day, despite being terminated and expressly told to refrain from accessing the system in any way, Pasha continued to access the PayCargo system. This prompted an August 16, 2018 cease and desist letter demanding such unauthorized access immediately cease.

20.     Prior to Pasha's departure from PayCargo, Pasha co-founded a company called WhiteHack, LLC, which purports to offer the service of hacking into its customers websites for the purpose of exposing vulnerabilities.

21.     On August 22, 2018, upon discovering that Pasha had been operating a business in during his time at PayCargo, PayCargo sent Pasha another cease and desist letter demanding he immediately stop using the PayCargo name and trademark in connection "WhiteHack Lab."

22.     In particular, PayCargo took issue with the fact that Pasha included false references/testimonials that purported to be from PayCargo, as well as certain defamatory claims about the PayCargo system.

23.     On August 27, 2018, PayCargo sent Pasha another letter demanding access credentials to PayCargo's AWS (Amazon Web Services) Management Console account which, housed the PayCargo development environment, and which Pasha had set up using his personal AWS account while under the employ of PayCargo.  PayCargo was not able to convince Pasha to turn over the demanded credentials, but ultimately, PayCargo's IT team was able to transfer the IP back into an account that was under the control of PayCargo.

24.     On September 11, 2018, PayCargo sent Pasha another demand letter that included a draft affidavit that essentially asked Pasha to confirm that he had complied with PayCargo's demands to delete any and all confidential and proprietary information on his personal computer, as well as to reaffirm his obligation of confidentiality.

25.     Pasha refused to sign this affidavit.

4

26.    On July 18, 2019, PayCargo filed two lawsuits against its primary competitor, CargoSprint, LLC ("CargoSprint").

27.    In the Southern District of Florida, PayCargo sued CargoSprint and its principal, Joshua Wolf, for essentially trademark infringement and misappropriation of trade secrets. *PayCargo, LLC v. CargoSprint, LLC, et al.*, Case No. 1:19-cv-22995 (S.D. Fla.) (the "Florida Litigation").

28.    The trademark infringement claims pertain to CargoSprint's use of the name "PayAirCargo."

29.    The trade secret claims pertained to CargoSprint and Wolf's initially posing as a customer in the PayCargo system in order to reverse engineer their own competing payment processing system called SprintPay.

30.    In another case filed in the Northern District of Georgia, PayCargo is suing CargoSprint and Joshua Wolf under antitrust law for an illegal tying arrangement for SprintPay being illegally tied to SprintPass (a warehouse management system). *PayCargo, LLC v. CargoSprint, LLC, et al.*, Case No. 3:19-cv-00085 (N.D. Ga.) (the "Georgia Litigation").

31.    Between these two cases, there is substantial litigation between PayCargo and CargoSprint.

32.    Although based in Georgia, CargoSprint and Wolf operate primarily out of Guadalajara, Mexico.

33.    In the Florida Litigation, PayCargo dismissed its trade secret claims, without prejudice, on June 2, 2020.

34.    Recently, Pasha booked a trip for a two-night stay in Guadalajara, Mexico for July 3, 2020 through July 5, 2020.

5

35.     Contemporaneously, CargoSprint has been announcing an impending release of a new version of SprintPay.

36.     Pasha is booking a trip to Guadalajara, in the middle of a pandemic, to meet with CargoSprint and Joshua Wolf, who have historically shown a willingness to reverse engineer the PayCargo system, so that Pasha may market his knowledge of the PayCargo system, the Trade Secrets and other confidential information.

37.     This violates Pasha's statutory, contractual, and common law duties to preserve the confidentiality of the Trade Secrets.

38.     Plaintiff has retained the undersigned counsel to bring this action and has agreed to pay for reasonable attorneys' fees and costs incurred.

39.     All conditions precedent to the filing of this action have occurred or have been performed, waived, satisfied or excused.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
### 18 U.S.C. § 1836(b)
(Against Pasha)

40.     PayCargo re-alleges and incorporates by reference paragraphs 1-39 as if fully set forth herein.

41.     PayCargo owns all right title and interest in the Trade Secrets.

42.     The Trade Secrets constitute trade secrets within the meaning of 18 U.S.C. § 1839(3) as they are types of business, technical information, engineering information, patterns, formulas, techniques, procedures, programs, and codes PayCargo has taken reasonable measures to keep secret.

43.     PayCargo derives economic value from the Trade Secrets as they are not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic

value from the disclosure or use of the Trade Secrets within the meaning of 18 U.S.C. § 1839(3)(B). Further, the Trade Secrets are used and intended for use in interstate and foreign commerce.

44.    Pasha knew, or had reason to know that he acquired the Trade Secrets by improper means, and/or disclosed or used those trade secrets without PayCargo's express or implied consent.

45.    Pasha has used and continue to use the misappropriated PayCargo Trade Secrets for their own benefit.

46.    As a result of Pasha's actions, PayCargo has suffered damages, and will continue to suffer irreparable injury.

47.    Such preliminary injunction should be sufficient in scope and effect so as to prevent any actual or threatened misappropriation and on such terms reasonable to prevent the Defendants from further misappropriation.

48.    Pasha's conduct was willful and malicious, with disregard for PayCargo's rights, so as to justify an award of attorneys' fees under 1836(b)(3)(D).

49.    Pasha's conduct requires the Pasha to pay damages to PayCargo for (i) PayCargo's actual loss caused by the misappropriation of PayCargo's trade secrets and (ii) damages for any unjust enrichment caused by Pasha's misappropriation of PayCargo's trade secrets.

WHEREFORE, PayCargo, LLC demands a judgment be entered against Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv for the full amount of its actual damages, all applicable prejudgment and postjudgment interest, damages for any unjust enrichment experienced by Pasha, disgorgement of profits, reasonable royalties, exemplary damages, injunctive relief, a seizure order, an award of attorney's fees and costs, and any other relief which the Court deems just and proper.

## COUNT II
## CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION
(Against Pasha)

50.    PayCargo re-alleges and incorporates by reference paragraphs 1-39 as if fully set for herein.

51.    Pasha knowingly, willfully, unlawfully, and with intent to steal, commit an act of conversion of PayCargo's Trade Secrets .

52.    Pasha's acts of conversion were committed with the intent to permanently, or for an indefinite time, deprive PayCargo of its rightful possession, access to and use of the converted property, and to deprive PayCargo of the value of converted property.

53.    As a direct and proximate result of Pasha's conduct, PayCargo has suffered the deprivation of its property.

54.    Pasha's actions have interfered with PayCargo's enjoyment of its ownership rights over the converted property, over which Pasha has improperly exercised acts of dominion and control.

55.    As a direct and proximate result of the Pasha's conduct, PayCargo has suffered and will continue to suffer damages.

WHEREFORE, PayCargo, LLC demands a judgment be entered against Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv for the full amount of its actual damages, all applicable prejudgment and postjudgment interest, an award of costs, and any other relief which the Court deems just and proper.

## COUNT III
### BREACH OF CONTRACT
(Against Pasha)

56. PayCargo re-alleges and incorporates by reference paragraphs 1-39 as if fully set for herein.

57. PayCargo and Pasha entered into a contract in the form of the Employment Agreement attached as **Exhibit A**.

58. Pasha has breached the Employment Agreement by retaining the Trade Secrets and by disclosing them to CargoSprint, LLC, a competitor of PayCargo.

59. Pasha's breach of the Employment Agreement was material.

60. PayCargo was damaged as a result of this breach.

WHEREFORE, PayCargo, LLC demands a judgment be entered against Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv for the full amount of its actual damages, all applicable prejudgment and post judgment interest, an award of attorney's fees and costs, injunctive relief, and any other relief which the Court deems just and proper.

## COUNT IV
### AIDING AND ABETTING DISCLOSURE OF TRADE SECRETS
(Against Lauri)

61. PayCargo re-alleges and incorporates by reference paragraphs 1-39 as if fully set for herein.

62. As explained above, Pasha has disclosed the Trade Secrets to CargoSprint in violation of his duties under statute, contract and common law.

63. Lauri has knowingly aided and abetted this conduct.

64. Lauri was award of Pasha's responsibilities to maintain the secrecy of the Trade Secrets.

**EXHIBIT C: DEMAND LETTER**

I.



**XANDER LAW GROUP**

PASSION · INTEGRITY · RESULTS

*THE WHITE BUILDING*
ONE N.E. 2ND AVENUE
SUITE 200
MIAMI, FL 33132
TEL :(305) 767-2001
WAYNE@XANDERLAW.COM
WWW.XANDERLAW.COM

June 30, 2020

*via hand delivery*

Pavel Galbreath
29 Fan Hill Road
Monroe, CT 06468

    *Re:   Your Upcoming Trip to Guadalajara*

Dear Mr. Galbreath:

    The undersigned firm represents PayCargo, LLC ("PayCargo") in connection with your efforts to disclose your knowledge of the PayCargo system and trade secrets to PayCargo's direct competitor, CargoSprint, LLC ("CargoSprint").

    As you know, you served as the Chief Technology Officer of PayCargo for over a year and were intimately familiar with every aspect of the PayCargo system. Further, you were deeply involved in converting the PayCargo platform to a Node.js architecture, an architecture currently being touted by CargoSprint as the basis for its SprintPay platform.

    CargoSprint is currently involved in extensive litigation with PayCargo in various U.S. federal courts. We are aware of your trip to Guadalajara, Mexico this coming Friday through Sunday. Guadalajara is the primary location of CargoSprint. We can think of no other reason for you to travel to Guadalajara in the middle of a pandemic, other than to market to CargoSprint your knowledge of the PayCargo system and trade secrets. Such would be a violation of your contractual and statutory duties to preserve the confidentiality of PayCargo's trade secrets.

    Thus, we have prepared the enclosed Complaint which we are ready to file if this trip occurs, or if you continue to provide CargoSprint with PayCargo's trade secrets and confidential information. We are also serving you with the enclosed subpoena for documents evidencing your interactions with CargoSprint and Joshua Wolf. PayCargo takes the confidentiality of its trade secrets and proprietary information very seriously and is thus deeply concerned about this upcoming trip. Thus, it stands ready to file suit to protect this information from being disclosed to its direct competitor.

    That said, in lieu of litigating this matter, PayCargo hereby demands the following within 72 hours of your receipt of this letter:

    1.    Provide written assurances that you will not contact Joshua Wolf or any agent of CargoSprint.

2.    Provide all communications between you and Wolf/CargoSprint, including emails, text messages, WhatsApp messages, Slack messages, etc.; and

3.    Provide a detailed sworn statement that completely and truthfully attests to the nature of your dealings with Wolf.

Please contact either myself, or my client, to discuss upon your receipt of this package.

Very truly yours,

WAYNE R. ATKINS, ESQ.
For the firm

2