CONSULTING AGREEMENT

AGREEMENT made as of the July 07, by and between PAYCARGO LLC a Delaware limited liability company (the "Company"), with an address at 2100 Salzedo St., Suite 200, Coral Gables, Florida 33134 and Wake Up LLC with an address at 20 Pine St. #715, New York, NY 10005 (the "Provider")

WITNESSETH:

WHEREAS, the Provider has certain expertise and experience in the field of software development and programming, which expertise and experience are desired by the Company; and

WHEREAS, the Company intends to engage the Provider to provide consulting services to the Company and any affiliates designated by the Company (the "Company Parties") pursuant to the terms of this Consulting Agreement; and

WHEREAS, the Provider desires to provide such services to the Company Parties pursuant to this Consulting Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements of the parties contained herein, the sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

1. **Term and Termination.**

(a) *Term.* The Company hereby engages the Provider, and the Provider hereby accepts engagement by the Company, upon the terms and conditions hereinafter set forth for the period commencing on the date hereof and continuing for a period of one month from the date hereof (the "Initial Term").

(b) *Termination.* Either party may end the relationship and terminate this Agreement for any reason or no reason, upon 15 days' written notice to the other.

2. *Services.* During the term of this Agreement, the Provider shall render such services to the Company Parties, at such reasonable times and for a reasonable duration as from time to time shall be requested by Juan Dieppa, Thomas Vieweg and Eduardo Del Riego. Such services shall be with respect to research, analysis and planning of the Company's technology in respect to business objectives as may be communicated between the Company Parties and the Provider. The Provider agrees to undertake on the Company's behalf only those assignments made by the Company Parties and not to intentionally take any actions during the term of this Agreement that would be harmful to the business and operations of the Company.

3. Compensation.

(a) Base Compensation. As consideration for the services rendered by Provider pursuant to the terms of this Agreement, the Company hereby agrees to pay the Provider $5,000 for the first month. If Company desires to continue engaging Provider after first month, it will be subject to a separate agreement.

(b) Provider shall not incur any expenses on the Company's behalf or in furtherance of providing the services discussed hereunder unless such expenses have been previously approved in writing (including by return email communication) by the Company. Following such approval, Provider may incur the expense and invoice the Company for such expenses, and invoices for fees (and expenses) shall be paid by the Company within 15 days after receiving an invoice from the Provider therefore.

*(c) Notwithstanding any termination of this Agreement, the Provider shall be entitled to receive from the Company any approved and actually incurred unpaid fees and unreimbursed expenses (which fees and expenses shall continue to be payable subject to the terms hereof) in connection with services performed through the effective date of such termination.*

4. Disclaimer of Responsibility for Acts of the Company. The obligations of the Provider described in this Agreement consist solely of the performance of consulting services, furnishing of information and advice to the Company. In no event shall the Provider be required by this Agreement to act as the agent of the Company or otherwise to represent or make decisions for the Company. All final decisions with respect to acts of the Company or its affiliates, whether or not made pursuant to or in reliance on information or advice furnished by the Provider hereunder, shall be those of the Company or such affiliates, and the Provider shall under no circumstances be liable for any expense incurred or loss suffered by the Company as a consequence of such decisions.

5. Non-Competition; Confidentiality, Non-Solicitation and Intellectual Property.

(a) Noncompetition. During the Term and until the 18-month anniversary of the date of Termination of this Agreement, the Provider shall not engage in or become associated with any Competitive Activity. For purposes of this Section 6(a), a "Competitive Activity" shall mean any involvement in any business engaged in transactions related to cargo shipment. The Provider shall be considered to have become "associated with a Competitive Activity" if one of Provider's officers or contractors becomes involved as an owner, employee, officer, director, independent contractor, agent, partner, advisor, or in any other capacity calling for the rendition of the Provider's personal services, with any individual, partnership, corporation or other organization that is engaged in a Competitive Activity and his involvement relates to a significant extent to the Competitive Activity of such entity; If, at any time, the provisions of this Section 6(a) shall

- 2 -

be determined to be invalid or unenforceable, by reason of being vague or unreasonable as to area, duration or scope of activity, this Section 6(a) shall be considered divisible and shall become and be immediately amended to only such area, duration and scope of activity as shall be determined to be reasonable and enforceable by the court or other body having jurisdiction over the matter; and the Provider agrees that this Section 6(a) as so amended shall be valid and binding as though any invalid or unenforceable provision had not been included herein.

(b) Non-Solicitation. The Company covenants and agrees that during the period of its engagement with the WakeUp, LLC (the "Consulting Period") and for a period of 18 months thereafter, regardless of the reason for the termination of the Consulting Period, Company shall not, without the prior written consent of the WakeUp, LLC, either directly or indirectly, whether for Company's own benefit or the benefit of others:

(i) solicit, offer employment to, employ or take any other action intended, or that a reasonable person acting in like circumstances would expect, to have the effect of causing any officer or employee of, or a consultant to the WakeUp, LLC, who was such an officer or employee or consultant at the time of the termination of the Consulting Period, to terminate his or her employment or consulting engagement with the WakeUp, LLC and/or accept employment or become affiliated with, or provide services for compensation in any capacity whatsoever to, any other entity or person; or

(ii) provide any information, advice or recommendation with respect to any such officer or employee or consultant to any person or entity that is intended, or that a reasonable person acting in like circumstances would expect, to have the effect of causing any officer or employee of or consultant to the WakeUp, LLC who was such an officer or employee or consultant at the time of the WakeUp, LLC's termination of employment, to terminate his or her employment or consulting engagement with the WakeUp, LLC and/or accept employment or become affiliated with, or provide services for compensation in any capacity whatsoever to, any other person or entity.

(c) Confidentiality, Non-Solicitation and Intellectual Property. The Company and Provider each acknowledge that Provider will have access to and be involved in dealing with the Company's confidential information, employees and intellectual property. Therefore, as a condition of Provider's acceptance of this Agreement and the terms of the Letter Agreement, concurrently with the execution of this Agreement, Provider will enter into the Company's standard Confidentiality, Non-Solicitation and Intellectual Property Agreement.

(d) Survival and Other Matters. The provisions of Section 6(a), 6(b) and 6(c) shall survive the termination of this Agreement. This provision shall not be construed to limit the survival of any other provisions which also survive the termination of this Agreement by the express or implied terms of such provisions. The Provider acknowledges that he has been engaged for his unique services and that the breach of any provision in Sections 6(a), 6(b) and 6(c) would cause grave and irreparable injury to the Company that would not be compensable in

- 3 -

money damages and, therefore, in addition to the Company's other express and implied remedies, the Company shall be entitled to injunctive and other equitable relief to prevent any actual, intended or likely injuries that may result from such breach. However, nothing in this Section shall limit any other right or remedy to which the Company may be entitled. The existence of any claim or cause of action which the Provider may have against the Company shall not constitute a defense or a reason to invalidate any of the provisions of this Section 6.

6. <u>Entire Agreement; Amendment; Waiver</u>. This Agreement contains the entire understanding of the parties as to the subject matter hereof and fully supersedes all prior agreements and understandings between the parties as to such subject matter. This Agreement may not be amended, supplemented, cancelled or discharged, except by a written instrument executed by the party as to whom enforcement is sought. No failure to exercise, and no delay in exercising, any right, power or privilege hereunder shall operate as a waiver thereof. No waiver of any breach of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of this Agreement.

7. <u>Severability</u>. The parties acknowledge that the terms of this Agreement are fair and reasonable at the date signed by them. However, in light of the possibility of a change of conditions or differing interpretations by a court of what is fair and reasonable, the parties stipulate as follows: if any one or more of the terms, provisions, covenants or restrictions of this Agreement shall be determined by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated; further, if any one or more of the terms, provisions, covenants, and restrictions contained in this Agreement shall for any reason be determined by a court of competent jurisdiction to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed, by limiting or reducing it, so as to be unenforceable to the maximum extent compatible with then applicable law.

*P.C.*

*[signature]*

- 4 -

8. <u>Notices</u>. All notices, requests, demands and other communications provided for by this Agreement shall be in writing and mailed in the United States enclosed in a registered or certified post-paid envelope, return receipt requested, or transmitted by facsimile, or delivered by same-day or overnight courier service, and addressed to the addresses of the respective parties stated below or to such changed addresses as such parties may fix by notice:

To the Company:

<u>PayCargo, LLC</u>
<u>2100 Salzedo Street</u>
<u>Suite 200</u>
<u>Coral Gables, FL</u>
<u>33134</u>

To the Provider,

Wale Up LLC
20 Pine Street, #715
New York, New York, 10005
Attention: Pasha Gulbreath
pasha@waleup.com

*provided, however,* that any notice of change of address shall be effective only upon receipt. Any such notice shall be deemed to have been received on the date delivered to or received at the premises (as evidenced by the date noted on the return receipt, facsimile transmission receipt or courier receipt).

9. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws

10. <u>Headings</u>. The headings in this Agreement are for convenience of reference only and shall not control or affect the meaning or construction of this Agreement.

11. <u>Further Assurances</u>. Each party agrees at any time, and from time to time, to execute, acknowledge, deliver and perform, and/or cause to be executed, acknowledged, delivered and performed, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and/or assurances as may be necessary, and/or proper to carry out the provisions and/or intent of this Agreement.

12.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunder set their hands and seals the day and year first above written.

**COMPANY:**

By: _____

**PROVIDER:**
Wake Up LLC

By: _____
Name: Pasha Galbraith