IN UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

---

PASHA PROBIV

        **Plaintiffs,**

        -against-

PAYCARGO LLC,
EDUARDO DEL RIEGO,

and JASON WEBER

        **Defendants.**

---

Complaint for a Civil Case

Case No: 1:22-cv-02907-HG-JRC

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT

Plaintiff Pasha Probiv, appearing pro se, respectfully alleges as follows:

1. Plaintiff Pasha Probiv, a citizen of New York, is pro se and sui juris who owns and operates a technology consulting company and a cyber-security company in New York, NY.

2. Defendant PayCargo LLC ("PayCargo") is a Foreign Delaware limited liability company authorized to transact business within the State of Florida and with its principal place of business in Coral Gables, Florida. PayCargo LLC is a company that provides electronic payment system for the global shipping industry.

3. Defendant PayCargo derives all of its revenue from inter-state and international commerce.

4.  Defendant Eduardo del Riego ("EDR") is sui juris and a resident of the State of Florida and is also the CEO and President of PayCargo LLC.

5.  Defendant Jason Weber is sui juris and a resident of the State of Florida.

6.  Defendant Jason Weber is an attorney who was at all material times the Chief Legal Officer of PayCargo.

7.  Jason Weber reported and continues to report directly to PayCargo's CEO Eduardo del Riego.

8.  Defendants PayCargo, Eduardo del Riego and Jason Weber are collectively referred to as "Defendants" hereunder.

9.  At all times material to this Complaint, the individual officers, directors, executives, managers, supervisors, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, executives, managers, supervisors, employees and/or agents of Defendant, PayCargo.

10. Defendants have significant business contacts in New York and derive significant amount of revenue from their clients in New York. There are 452 vendor clients in New York (Exhibit I) who receive payments from payer clients through PayCargo system.

11. Defendants malicious conduct has caused direct financial loss to Plaintiff in New York, including, opportunity costs, damage to business relationships and loss of clients (Exhibit J), injury to reputation, prestige and standing.

12. Additionally, Defendants had a reasonable expectation that their malicious conduct would have consequences in New York.

13. Jurisdiction of the subject matter of this action is established in this Court under Title 28 of the United States Code, Section 1332 (diversity) and the amount in controversy exceeds the jurisdictional requisite.

14. This is the proper venue for this action in that unlawful acts alleged herein caused a significant amount of harm was committed upon Plaintiff and Plaintiff's business in this Court's jurisdiction.

## FACTUAL BACKGROUND

15. Plaintiff started serving as a technology consultant for Defendant PayCargo in July 2017 and the parties signed a Consulting Agreement which is attached hereto as Exhibit A. Plaintiff also employed other people to work for it, as contractors of Wale Up LLC, under the Consulting Agreement it had with PayCargo.

16. Thereafter, Plaintiff accepted a position with PayCargo as Chief Technology Officer.

17. On or about August 15, 2018, Plaintiff resigned as Chief Technology Officer from PayCargo to pursue other business opportunities with his own business.

18. After Plaintiff's resignation, in retaliation and with purposeful ill will toward Plaintiff, Defendants started fabricating false facts in their communications to Plaintiff and other PayCargo officers: (a) of him being recently fired (b) him refusing to transfer credentials to PayCargo.

19. Those false facts were intentionally fabricated by Defendants to sue Plaintiff and destroy its reputation. Plaintiff received multiple cease and desist letters based off false facts that never took place after its departure from PayCargo.

20. As final communication after its departure, Plaintiff received a demand on around Sept 2018 from Defendants to sign a sworn statement that incorporated all the false facts they previously communicated coercing him to accept those false facts as true or endure litigation (Exhibit D).

21. This complaint is brought to this court due to coercion, post-employment retaliation, harassment and the illegal efforts of PayCargo, EDR and Jason Weber to prevent Plaintiff from pursuing business opportunities with CargoSprint LLC ("CargoSprint") a leading competitor of PayCargo by threats, intimidation, coercion and filing of Malicious Action for improper purposes and with intentional misrepresentations to the court, and complete disregard for the truth.

22. On July 2nd, 2020, **22 months** after Plaintiff's resignation from PayCargo, PayCargo threatened Plaintiff and his wife, Lauri Galbreath, with the prosecution of an action for breaches of contract, trade secret misappropriation and conversion, defalcations and other misfeasance.

23. Jason Weber on behalf of PayCargo and at the direction of PayCargo's CEO Eduardo del Riego delivered via private investigator to the home of Plaintiff and his wife, Lauri Galbreath, located in the State of Connecticut a sham lawsuit draft (Exhibit B) which PayCargo threatened to file if (according to the demand letter accompanying the delivered lawsuit Exhibit C) Plaintiff traveled to Mexico to meet with Joshua Wolf or continued contacting Joshua Wolf, CEO of CargoSprint.

24. The pre-suit letter did not demand returning or destroying any Trade Secrets belonging to PayCargo they allegedly tried to protect, instead it focused on coercing Plaintiff to "stop communicating" with CargoSprint and Joshua Wolf.

25. The draft federal lawsuit delivered to the home of Plaintiff had no merit and was filed solely for improper purposes, including (a) preventing Plaintiff from enjoying a working relationship with CargoSprint and thereafter (b) attempting to stipulate a settlement in which Plaintiff in order to get the case dismissed would have to falsely testify against itself and PayCargo's main competitor, CargoSprint.

26. The draft lawsuit, *inter alia*, contained the following misrepresentations that were made for the sole purpose of coercing Plaintiff from meeting with and/or working with CargoSprint:

    a. False accusation that Plaintiff misappropriated PayCargo's trade secrets.

    b. False accusation that Plaintiff's wife Lauri Galbreath directed Plaintiff to store PayCargo's trade secrets on its personal computer.

    c. False accusation that Plaintiff's wife conspired with Plaintiff on misappropriating PayCargo's trade secrets.

    c. False accusation that Plaintiff used its personal computer to store PayCargo's trade secrets.

    d. False accusation that Plaintiff refused to render access to PayCargo's system upon its resignation from PayCargo.

    e. False statement that Plaintiff was terminated by PayCargo's CEO on August 15th, 2018.

27. The false accusations were delivered to Plaintiff and his wife in a draft complaint without any supporting evidence and with a malicious purpose of coercion There were no valid legal claims against Plaintiff and his wife. There was absolutely no evidence or probable cause for Plaintiff's alleged misappropriation of Trade Secrets.

28. Defendant PayCargo filed a federal lawsuit in the Southern District of Florida (*PayCargo vs. Galbreath* 1:20-cv-22885-KMW) ("Malicious Action") against Plaintiff shortly after coercion paperwork was served on Plaintiff. The filed complaint didn't mention the name of Plaintiff's wife or company and didn't include them as defendants, contrary to what was presented in the draft complaint.

29. Malicious Action did not include CargoSprint as a Defendant for another 8 months since it was filed (Malicious Action D.E. 1, 45). Defendants could not have been acting with intent to stop alleged misappropriation without including a party with which the alleged "trade secrets" were allegedly "shared".

30. Defendants threatened to institute litigation in bad faith, with meticulously concealed purpose to harass and intimidate the Plaintiff and third parties and not to bring their claims to a definitive adjudication.

31. After appearing as an attorney in Malicious Action representing PayCargo, Defendant Jason Weber, under direction of Defendant Eduardo del Riego, contacted Plaintiff in an attempt to settle the Malicious Action by offering Plaintiff to sign a false statement, that included a false testimony against Plaintiff and CargoSprint.

32. Defendant Jason Weber threatened to join Plaintiff's company as a Defendant in the Malicious Action, forcing Plaintiff to acquire legal counsel if Plaintiff weren't going to provide the sought statement. Plaintiff had to incur tens of thousands of dollars in legal fees after refusing to commit perjury and provide the false sworn statement.

33. In January 2021, Plaintiff secured verbal agreements with CargoSprint officers and planned to become CargoSprint's CTO and a 5% shareholder.

34. Defendants learned about an ongoing business relationship between Plaintiff and PayCargo's main competitor, CargoSprint and joined CargoSprint as Defendant in Malicious Action for improper purpose of harassing 3rd party to intervene and tortiously interfere with an existing business relationship.

35. Upon filing a 2nd amended complaint and its motion to dismiss for its Malicious Action (*PayCargo vs. Galbreath* 1:20-cv-22885-KMW D.E. 111; D.E. 164), Defendant PayCargo made another false accusation toward the Plaintiff:

   a. False accusation that Plaintiff embedded a special code upon its departure from PayCargo in PayCargo's system to spy on PayCargo's customers.

36. Defendant PayCargo intentionally and with sole purpose to harm the Plaintiff repeatedly published false, baseless allegations of Plaintiff spying on its former employer in front of CargoSprint attorneys and the public.

37. There was no mistaking the magnitude of the threats, harm and cruelty of conduct lodged against Plaintiff by PayCargo, Eduardo del Riego and Jason Weber. There were never any valid legal claims against Plaintiff, and his wife, Lauri Galbreath

38. As was stated to Plaintiff, in the demand letter delivered to him, if he personally met with representatives of CargoSprint to pursue business opportunities with CargoSprint (which Plaintiff was legally entitled to do) then PayCargo with the help of its Chief Legal Officer and attorney Jason Weber would file a sham lawsuit in federal court against Plaintiff and his wife to destroy their personal and professional reputations.

39. As a direct and proximate result of PayCargo, Eduardo del Riego and Jason Weber illegal and coercive demands, Plaintiff had a sham lawsuit filed against him for meeting with CargoSprint

and its representatives, Plaintiff also incurred tens of thousands of dollars in legal fees, millions of dollars of opportunity costs and suffered extreme emotional and physical distress under the repeated threat that PayCargo, Eduardo del Riego and Jason Weber to ruin him.

40. No suit was ever filed against Plaintiff's wife and the federal lawsuit filed by PayCargo never mentioned her name (Malicious Action D.E. 1, 45, 111).

41. The Malicious Action against Plaintiff, its later joined company, Wale Up LLC and later joined 3-rd party CargoSprint, LLC was dismissed without prejudice by Defendant PayCargo in November 2021 for lack of evidence against any of the parties (Malicious Action D.E. 163). The court ruled that curative conditions in favor of Probiv are necessary to dismiss the Malicious Action without prejudice (Malicious Action D.E. 1, 195, 197)..

42. Defendant Jason Weber made a public statement regarding the lawsuit in a 3-rd party publication upon its dismissal. (Exhibit E)

43. The statements from Malicious Action complaint were rephrased and republished by the publications in the United States and the United Kingdom in Oct. 2022. (Exhibit F, G)

44. The damages from republications of Malicious Action Complaint are ongoing.

### FIRST CAUSE OF ACTION – MALICIOUS PROSECUTION IN CIVIL ACTION

45. Defendants have initiated a sham Malicious Action against Plaintiff without probable cause or belief that it can succeed.

46. Malicious Action was voluntarily dismissed by Defendants. The court has ruled that curative conditions in favor of Probiv are necessary in order to dismiss the Malicious Action without prejudice (Malicious Action D.E. 195, 197)

47. Defendants conduct was intentional to cause malice to Plaintiff, ulterior motives to (a) interfere with a business relationship between Plaintiff and Defendant's main competitor (b) to seek a self-incriminating statement from Plaintiff as a compromise to avoid economic burden associated with litigation.

48. As a direct result of Defendants' malice Plaintiff suffered special damages, including, opportunity costs (Exhibit K), loss of clients (Exhibit J), attorney's fees, court costs in the sum of $10,140,000.00 or such greater amount as is determined by the Jury.

49. Plaintiff suffered general damages, including without limitation, injury to its business, damage to its reputation, prestige and standing and other damages in the amount as is determined by the Jury.

## SECOND CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

50. Plaintiff restates paragraphs 1 through 44 of this Complaint, and incorporates them herein by reference.

51. At the time Defendants coerced Plaintiff, Plaintiff had a legal right to meet with CargoSprint LLC for future business when the Defendants interfered in this relationship with threats and a sham lawsuit. Plaintiff had a reasonable expectation of earning substantial income and becoming a shareholder of CargoSprint.

52. When Defendants found out that Plaintiff was performing work for CargoSprint in February 2021, despite the fact that Defendants did everything in their power to prevent that relationship

under the color of law, Defendants then filed their Amended Complaint (Malicious Action D.E. 45) to join CargoSprint LLC and Plaintiff's company, Wale Up LLC, as Defendants.

53. Defendants knew about Plaintiff's interest in working with CargoSprint and a subsequent business relationship and intentionally and tortuously interfered with the relationship without just cause by the use of wrongful means of intimidation and sham litigation based on fabricated factual background.

54. Defendants had no belief in the merits of their Malicious Action, instituted the sham lawsuit in bad faith and with sole purpose of interference with business relations of Plaintiff.

55. Defendants intentionally interfered with Plaintiffs business rights and business expectancies by, *inter alia*, devising, aiding, abetting and actively participating in the scheme to coerce Plaintiff and to injure it and its business and reputation by the means of intentionally fabricated falsehoods in the course of Malicious Action.

56. Defendants intentionally interfered with Plaintiffs business rights and expectancies by, *inter alia*, intimidating CargoSprint's officers with extensive litigation as a result of a business relationship with the Plaintiff, suing CargoSprint with baseless trade secret claims that were nothing more than wrongful means of achieving their objective to cause harm to Plaintiff and the Defendants' main competitor, CargoSprint, as well as disrupt any future business relationship they might have together

57. Defendants' improper methods, actions and practices were, *inter alia*, defamatory, unethical, oppressive, over-reaching, fraudulent, hostile, sharp, and criminal.  In all, Defendants' interference was completely unjustified.

58. As a direct result of Defendants' tortuous interference with Plaintiff's business relations and existing agreements, Plaintiff suffered special damages, including, without limitation, opportunity costs, injury to Plaintiff's relationship with CargoSprint (Exhibit K), loss of clients (Exhibit J), attorney's fees, court costs in the sum of $10,140,000.00 or such greater amount as is determined by the Jury.

59. As a direct result of Defendants' tortious interference with Plaintiff's business advantage and existing agreements, Plaintiff suffered general damages and incurred loss, including, without limitation, injury to its business, damage to its reputation, prestige and standing, and other damages in theamount as is determined by the Jury.

## THIRD CAUSE OF ACTION – INJURIOUS FALSEHOOD

60. Plaintiff restates paragraphs 1 through 44 of this Complaint, and incorporates them herein by reference.

61. During the course of Malicious Litigation, Defendants made false statements about Plaintiff's conduct (listed in ¶26.c-e, ¶35 above) that were intentionally calculated to prevent others, including CargoSprint from dealing with Plaintiff.

62. Specifically, the statement (¶35, 36, above) about Plaintiff planting a Google Analytics tag in its former employer system with the purpose of spying were made with the intention to scare off CargoSprint and other potential clients from dealing with Plaintiff. The intentionally fabricated statement directly concerns the quality of services Plaintiff provides and completely discredits Plaintiff in the eyes of any prospective or existing customers.

63. Defendants knew that the false statements they were making would cause egregious damage to Plaintiff's economic advantage, business relationships, reputation and revenue of businesses associated with the Plaintiff.

64. Defendants knowingly and willfully caused grave injury to Plaintiff by making intentionally false statements.

65. As a direct result of Defendants misconduct, Plaintiff suffered special damages and incurred direct financial loss due to opportunity costs, harmed business relationship with CargoSprint (Exhibit K), loss of clients (Exhibit J), attorneys' fees, travel to Florida and other litigation costs in the amount of $10,140,000.00 or such greater amount as determined by the Jury.

## FOURTH CAUSE OF ACTION – PRIMA FACIE TORT

66. Plaintiff restates paragraphs 1 through 44 of this Complaint, and incorporates them herein by reference.

67. Defendants intentionally inflicted harm on Plaintiff without excuse or justification by publishing the statements of Plaintiff "spying" on PayCargo's customers in their Voluntary Dismissal Motion (Malicious Action D.E. 164).

68. Defendants' statements in Voluntary Motion to Dismiss were motivated solely by disinterested malevolence as they were published in the course of dismissing Defendants trade secret claims.

69. As a direct result of Defendants' statement, Plaintiff suffered special damages and incurred loss, including, without limitation, opportunity costs, loss of clients (Exhibit J), attorney's fees, court costs, and other damages in the sum of 10,140,000.00 or such greater amount as is determined by the Jury.

## **CONCLUSION AND REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Pasha Probiv respectfully requests the Court to enter Judgment against PayCargo LLC, Eduardo del Riego, and Jason Weber jointly and severally, as follows:

    A. Compensatory damages in the amount of $10,140,000.00;

    B. Punitive damages in the amount of $10,140,000.00 as a result of the Defendants' specific intent to harm Plaintiff and the actual harm inflicted on Plaintiff;

    C. Prejudgment interest on the principal sum awarded to Plaintiff by the Jury; to the date of Judgment at the maximum rate allowed by law;

    D. Post-judgment interest at the maximum rate allowed by New York law;

    E. Costs and such other relief as is just and proper.

Dated:   October 26, 2022

                                            __/s/Pasha Probiv_____
                                            Pasha Probiv (*pro se*)
                                            1216 Broadway, 2nd Fl
                                            New York, NY 10001
                                            Phone: (203) 903-2748
                                            Email: pasha.probiv@gmail.com

**EXHIBIT A: CONSULTING AGREEMENT**

**EXHIBIT B: MALICIOUS ACTION DRAFT**

**EXHIBIT C: PRE-SUIT DEMAND LETTER**

**EXHIBIT D: POST-EMPLOYMENT DEMAND LETTER**

**EXHIBIT E: PUBLICATION WITH JASON WEBER QUOTES**

**EXHIBIT F: PUBLICATION IN UK**

**EXHIBIT G: PULICATION IN US**

**EXHIBIT I: PAYCARGO NEW YORK VENDOR CLIENTS**

**EXHIBIT J: PIERETTI DECLARATION**

**EXHIBIT K: WOLF DECLARATION**