

SONAR Demo | SONAR Login | Customer Support

## American Shipper

READ • WATCH • LISTEN • NEWSLETTERS • SONAR • EVENTS • DISCOVER • RESOURCES • ABOUT US • FW ESPAÑOL

• Watch Now

# Home / News / Business / Legal issues / FreightTech firm PayCargo awarded $11.6M in trademark case

Air Cargo | American Shipper | Legal issues | News | Technology

# FreightTech firm PayCargo awarded $11.6M in trademark case

CargoSprint plans appeal after winning other cases in long-running dispute

Eric Kulisch • Wednesday, October 12, 2022                                    6 minutes read



PayCargo was awarded $11.6 million by a Florida court in a trademark infringement case. (Image: Shutterstock/Rawpixel.com)

A federal judge has ordered CargoSprint, an electronic payment and truck appointment platform for air freight logistics providers and cargo facilities, to pay larger rival PayCargo $11.6 million for trademark infringement and breach of contract related to a 2016 settlement between the companies.

The dispute centered on CargoSprint founder Joshua Wolf initially naming the company PayAirCargo in 2012 despite knowing of PayCargo's existence. The court determined the similar names created confusion among customers.

Judge Lauren Louis of the U.S. District Court for the Southern District of Florida said Wolf engaged in "willful, pervasive and relentless" unauthorized use of PayCargo's brand for several years.

Wolf told FreightWaves he plans to appeal the Sept. 30 ruling. CargoSprint has previously won other cases involving PayCargo.

PayCargo, based in Coral Gables, Florida, is a multimodal freight payment platform that allows logistics companies, customs brokers and cargo owners to electronically pay transportation vendors from a prepaid account or bank account so that cargo can be quickly released. The system automatically notifies customers that an invoice is available in the online portal for review. As soon as the payment is approved, an email alert is generated alerting the vendor.

There are more than 75,000 companies in the PayCargo network, including major ocean carriers such as Mediterranean Shipping Co. and Hapag Lloyd, as well as Delta Air Lines, Lufthansa and ground handlers Alliance Ground International and Swissport. Last year, the company processed more than $10 billion in freight payments, a 250% increase from 2020, partially because people shifted to online transactions during the pandemic.

The financial technology firm in June secured $130 million in Series C funding from money managed by Blackstone Group.

PayCargo attorneys have previously alleged that CargoSprint piggybacked off PayCargo's reputation resulted in several customers refusing to use PayCargo's services because of alleged poor experiences with its competitor.

In a December 2016 settlement, Wolf agreed to change the company's name and cease using the PayAirCargo name in any way, including advertising, email addresses and invoices. CargoSprint was also required to take affirmative mitigation steps, such as redirecting all internet traffic from the infringing domain name to the new website and advising senders to the support@paycargo.com email account of the new corporate name and email address.

PayCargo sued in 2019 over failure to comply with the settlement, including the continued use of language in invoices that incorporated language stating, "PayAirCargo has evolved! We are now CargoSprint."

Hundreds of thousands of invoices displayed the abused brand name, with one customer expressing in an email that she assumed PayCargo was CargoSprint. The defendant continued to send and receive emails at the support@payaircargo.com address as late as December 2019, a full two years after executing the settlement agreement, according to the court decision.

There were other examples of noncompliance.

Wolf and CargoSprint failed to stop or correct third parties from using the name PayAirCargo. American Express continued to identify PayAirCargo on credit card statements to CargoSprint's customers until at least March 2020. CargoSprint continued to be registered under the infringing name on a system used by Lufthansa Cargo. And the mimicked PayCargo name continued to be displayed by CargoSprint on Twitter and Facebook.

The record showed that CargoSprint was twice found in contempt of court for not complying with cease-and-desist orders for referencing the PayCargo brand.

"These violations were not excusable or inadvertent but were attributable to the defendants' failure to adequately investigate and ascertain the numerous ways in which the name appeared in the market and to remove or change the name used by defendants and others to identify defendant CargoSprint in commerce," Judge Louis wrote.

## Bad blood

In a statement to FreightWaves, Wolf said CargoSprint disagrees with certain elements of the ruling and plans to appeal.

"The verdict is in line with our expectations given the judge gave an indication of how she will rule for punitive time now. We have an appeal ready and with that appeal a bond will be in place. The lawsuits do not jeopardize the business going forward and in the end PayCargo's attempt to remove CargoSprint from the market will fail," he said.

Wolf acknowledged in an interview his company made mistakes in scrubbing traces of its previous name from correspondence and social media sites but noted PayCargo has been on the losing end of other lawsuits.

CargoSprint issued a clarifying statement that used the old name, "but we never tried to say we are PayCargo," he said. "You have to update thousands of different places. Yes, there were cases where a user name was not updated. We could have been more careful."

Earlier this year, a federal appeals court dismissed a lawsuit by Turret Labs USA for allegedly stealing trade secrets associated with its Dock Enroll software connecting freight forwarders and airlines. Turret alleged that CargoSprint had licensed Dock EnRoll through Lufthansa under false pretenses to misappropriate Turret's trade secrets and reverse-engineer its own software. But the court said Turret never treated its software functionality as confidential and didn't take reasonable steps to safeguard it.



(Photo: Jim Allen/FreightWaves)

"Dock EnRoll's functionality was readily apparent. So, Turret needed to do something more than password protect access to the software," Beverly Berneman, a partner at Golan Christie Talia LLP said in a blog post.

Wolf accused PayCargo CEO Eduardo Del Riego of conspiring with Turret Labs to use the company "as a proxy to sue us." The suit initially included a list of other claims that were ultimately thrown out or dropped before being revised into a case about theft of intellectual property.

CargoSprint also won a case in Georgia that Wolf characterized as "frivolous" and said he expects to soon get a fourth suit dismissed with prejudice. In that case, PayCargo alleges its former chief technology officer gave CargoSprint some of PayCargo's code.

Wolf dismissed the idea that there was even a need to cheat, saying, "We're a payment platform. This isn't rocket science."

PayCargo launched a "scorched earth" litigation campaign in July 2019 after CargoSprint refused to sell majority ownership to its only competitor, CargoSprint said in a statement. "One by one, each of the anti-trust, patent infringement, and trade secret claims fell apart, and in favor of CargoSprint. These allegations revealed themselves to be nothing more than thinly veiled attempts at disrupting CargoSprint's business in retaliation for CargoSprint's refusal to cede control of its company."

"While most of the claims have been dismissed, dropped, or otherwise disposed of, it has cost CargoSprint millions of dollars to defend itself against these actions and threats. . . . Even in this case, two of the original claims, one for unfair competition and one for trade secrets violations, were dismissed because PayCargo had no evidence to support them."

CargoSprint will base its appeal on several issues, including whether there should even be a trademark case for a common term such as "pay cargo," and whether PayCargo truly owns the trademark, Wolf said in the interview.

## Damage details

Even though PayCargo didn't ask for damages, the judge allowed recovery of profits under the Lanham Act, which shifts the burden of proving economic injury from the innocent party and forces the infringing party to disprove it gained economically from its behavior.

In addition to the $11.6 million in damages, Judge Louis ordered CargoSprint to reimburse PayCargo for attorney fees. The payout is almost half the net revenue CargoSprint received in its first eight years in business, through 2020.

"The persistent market use of the infringing name, even in post-transaction communications like the invoices, perpetuated the actual confusion in the market to Plaintiff's detriment," the judge said.

In setting the damages, the judge said CargoSprint couldn't prove higher spending on labor that it wanted included as part of business costs to be deducted from the award. She used accounting from PayCargo's own expert as the basis for CargoSprint's profits, saying she didn't trust CargoSprint's financial representations.

"We're extremely gratified with the court's decision," said PayCargo's Del Riego in a statement. "As a company founded on the highest principles of honesty and transparency, we have taken this case of another business infringing on our trademarks and breaching our agreement very seriously. We've worked hard to build PayCargo's reputation as the leader in the industry, so we owed it to our customers, employees and business partners to defend it vigorously."

Click here for more FreightWaves/American Shipper stories by Eric Kulisch.

RELATED NEWS:

PayCargo, fintech for freight, lands $130M from Blackstone Group

PayCargo helps shippers, forwarders pay it forward

#CargoSprint   #PayCargo   #punitive damages   #trademark infringement

## Leave a Reply

Your email address will not be published. Required fields are marked *

Name *

Email *                                                    ☐ Save my name, email, and website in this browser for the next time I comment.

Post Comment

Eric Kulisch

